# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

STEVEN CRUMP,      |

                 |    No. 2:07 CV 01582 AWT

     Petitioner,   |

                 |    ORDER OF DISMISSAL

         v.        |

                 |

TOM CAREY, et al.,   |

                 |

     Respondent.   |

_____ |

     This is a petition for a writ of habeas corpus under 28 U.S.C. § 2254 by a California state prisoner.  The State has filed an answer to the petition, including relevant state court records, and the petitioner a traverse.  Upon review of the pleadings and the state record, the court determines that no evidentiary hearing is required, and that the case may be disposed of on the present record.  *See* Rule 8, Rules Governing § 2254 Cases in the U.S. District Courts.

## Factual and Procedural Background

Petitioner Steven Crump ("Crump") is an inmate at Solano State Prison and challenges the finding of parole unsuitability by the California Board of Parole Hearings ("BPH"). Petition 1 (CR #1).  Crump argues that his procedural due process rights were violated when the BPH found him unsuitable for parole.  *Id.*

Crump was convicted of second degree murder in 1987 and sentenced to 16 years-to-life imprisonment by the Mendocino Superior Court.[1]  *Id.*  At a parole hearing on March 24, 2006, the BPH denied parole, concluding that Crump was unsuitable for parole because releasing him would "pose an unreasonable risk of danger to society" under Cal. Code Regs. tit. 15, § 2402(a).  *See* 3/24/06 RT, p. 95 (Petition Ex. B).  It was Crump's fourth unsuccessful parole hearing.  *Id.*

The BPH relied on several factors in reaching its decision, including:  (1) the commitment offense was particularly gruesome, *id.* at 95; (2) Crump had a history of prison disciplinary problems, *id.* at 97; and (3) Crump had not taken sufficient steps to upgrade his vocational background and participate in

---

[1]      A 1987 probation report included in the State's answer details the circumstances of the crime.  CR #9 (Ex. B).  Crump and his friend on an Indian reservation, Perry Hoaglen, had been drinking at Crump's home when an argument ensued.  *Id.* at 2-3.  The two men then drove in Crump's truck to a location called Maynard's Gate to "settle things."  *Id.* at 3-4.  The two began fighting and Crump eventually stabbed Hoaglin fourteen times, before running him over with a pick-up truck and then driving off, despite the fact that Hoaglin was still alive when Crump left the scene.  *Id.*  The jury convicted Crump of second-degree murder with a deadly weapon.  *Id.* at 2.

recommended self-help programs, *id.*

Crump then filed a habeas corpus petition in Mendocino Superior Court, challenging the decision of the BPH.  Petition 1.  Applying California law, the court reviewed the BPH determination under the "some evidence" standard and concluded that the BPH's decision was proper.  *See* Resp. Answer, Ex. E (copy of decision).  The court found that the BPH had properly supported its conclusion with "some evidence," including:  (1) that the commitment offense suggested Crump was particularly violent; (2) that Crump had recent disciplinary problems; and (3) Crump had failed to complete self-help programs and had no realistic plans for life after release.  *Id.*

The California Court of Appeal affirmed the decision, as did the California Supreme Court.  *See* Petition, Ex. L.  Crump then filed this present action.

Crump argues that there was no evidence in the record to support the decision of the BPH; thus, that the state court did not properly apply the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445, 454 (1986), violating Crump's clearly established procedural due process rights under the Fourteenth Amendment.  Petition 5-6.

In its answer, CR #9, the State admits exhaustion of state remedies, but argues that Crump is not entitled to a "some evidence" standard of review and that,

in any event, the state court properly applied a "some evidence" standard in

reviewing the BHP determination.[2]

## Discussion

Under the AEDPA, a federal court may grant habeas relief to a state

prisoner only if the petitioner demonstrates that the state court's decision denying

relief was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States."  28 U.S.C. § 2254(d)(1).  The Supreme Court has held that, in certain

circumstances, a state parole statute creates a protected liberty interest in the

receipt of a parole release date – an interest protected by the procedural safeguards

of the Due Process Clause.  *See Greenholtz  v. Inmates of Neb. Penal & Corr.*

*Complex*, 442 U.S. 1, 12 (1979).

The Ninth Circuit has held that California's parole scheme qualifies as such

a liberty-interest-creating statute.  *See Biggs v. Terhune*, 334 F.3d 910, 914 (9th

Cir. 2003); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006).

Thus, a state court reviewing a BPH determination must properly apply the "some

evidence" standard of procedural review that the Supreme Court articulated in

---

[2]        Crump's traverse, in substance, merely restates the allegations and
arguments in the petition.  *See* CR #13.

-4-

*Hill*, 472 U.S. at 454.  *See Sass*, 461 F.3d at 1129.[3]

In *Hill*, the Supreme Court held that "some evidence" supports a prison

administrative decision when "there is any evidence in the record that could

support the conclusion reached."  472 U.S. at 455 (describing minimum

procedural safeguards in prison disciplinary context).  In turn, in reviewing the

state court's application of the "some evidence" standard, a federal court must first

look to the statutes and regulations that frame the parole suitability determination.

*Irons*, 505 F.3d at 851.

California regulations provide that, in determining whether a prisoner is too

---

[3]     The State contends that while Crump may have a protected liberty
interest in parole, it is not clearly established that such an interest demands
application of the "some evidence" standard.  Answer 7-8.  The Ninth Circuit has
already explicitly considered and rejected such an argument.  *See Sass*, 461 F.3d at
1128-29 (finding the "some evidence" standard for a parole decision is clearly
established by *Hill*, 472 U.S. at 454); *see also Irons v. Carey*, 505 F.3d 846, 851
(9th Cir. 2007) (same). While it is true that, under the AEDPA, existing circuit
precedent alone is insufficient to constitute clearly established law, *see Duhaime v.
DuCharme*, 200 F.3d 597, 600 (9th Cir. 1999), circuit precedent may, nonetheless,
serve as persuasive authority for what law is "clearly established" by the Supreme
Court.  *Id.*  For the purposes of the present case, the reasoning of *Sass* is therefore
compelling and should be adopted by this court: "some evidence" is a particularly
low evidentiary standard; to hold that something *even less* is all that is required by
due process to support a parole-denial decision would essentially permit the State
to make arbitrary determinations, contravening the clearly established law of
*Greenholtz*, *Hill*, and other Supreme Court decisions that establish a constitutional
floor for procedural due process rights in the prison context.  *See Sass*, 461 F.3d at
1129.

dangerous to be released, the BPH should consider all relevant information, including circumstances tending to show "unsuitability" and circumstances tending to show "suitability" for parole.  *See* Cal. Code Regs. tit 15, § 2402(b)-(d). The prisoner's "past and present attitude toward the crime" is relevant, *id.* at 2402(b), as is "Institutional Behavior" and an "Unstable Social History," both of which militate toward unsuitability.  *Id.* at 2402(c)(3) & (6).  Finally, the commitment offense is relevant, *id.* at 2402(c)(1), and a particularly gruesome offense or one showing "exceptionally callous disregard for human suffering" may, in and of itself, in certain circumstances, suffice to deny parole.  *See Irons*, 505 F.3d at 852.

In this case, the state court properly found that "some evidence" supported the BPH's determination of Crump's unsuitability for parole.

First, the BPH properly considered the gruesome nature of the commitment offense, noting that Crump stabbed Hoaglin fourteen times, ran over him with his pick-up and then left him for dead – something the BPH deemed a "horrible way to die."  3/24/06 RT, p. 95-96.  This finding on the details of the crime constituted "some evidence" of parole unsuitability based on the gruesome nature of the commitment offense.  *See Irons*, 505 F.3d at 852.

The BPH did not, however, rely *solely* on the character of the underlying

offense to determine unsuitability; it also considered and relied on additional

factors.  The BPH concluded that Crump had not taken significant steps to address

substance abuse problems, despite the fact that alcohol was implicated in his

crime. *Id.* at 96. It found that additional self-help, including anger management,

would assure the BPH that Crump had addressed lingering behavioral issues.  *Id.*

at 96-96. The BPH also noted that Crump had recent disciplinary issues at prison

which, together with other incidents, suggested that Crump had a tendency to

blame others for his problems and had not acknowledged his own role in creating

tumultuous relationships.  *Id.* at 95, 97.

Together, these specific findings constituted "some evidence" of parole

unsuitability, and were properly considered by the BPH under Cal. Code Regs. tit

15, § 2402(b)-(c).

## Conclusion

In sum, the state court's determination that "some evidence" supported the

BPH's denial of parole was neither contrary to nor an unreasonable application of

clearly established federal law; thus, there was no due process violation in

Crump's parole hearing.  The petition for a writ of habeas corpus is **DENIED.**

Dated:  August 10, 2009.

_/s/ A. Wallace Tashima_

_____    United States Circuit Judge
                                   Sitting by Designation